UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NORMAN CRAIG BREEDLOVE aka "CRAIG BREEDLOVE," an Individual,<br><br>Plaintiff,<br><br>v.<br><br>MUSEUM OF SCIENCE AND INDUSTRY, CHICAGO, an Illinois 501(c)(3) corporation,<br><br>Defendant. | Case No. 1:16-cv-05861<br><br>Honorable Ronald A. Guzman |

**PLAINTIFF'S OPPOSITION TO DEFENDANT MUSEUM OF SCIENCE AND INDUSTRY'S MOTION TO DISMISS COUNTS I, II AND IV OF PLAINTIFF'S COMPLAINT**

Plaintiff Norman Craig Breedlove ("Plaintiff") submits his Opposition to Defendant Museum of Science and Industry, Chicago's ("Defendant") Motion to Dismiss Counts I, II and IV of Plaintiff's Complaint ("Motion"), as follows:

**I.     INTRODUCTION**

There can be no credible dispute that the historic Spirit of America vehicle is a very special piece of Americana. To make the record-setting vehicle accessible to the public, Plaintiff agreed to loan the vehicle to Defendant to be cared for and to be displayed in the museum. In 2015 Plaintiff requested the vehicle be returned to Plaintiff. Much to Plaintiff's surprise, after agreeing to maintain and to display the historic vehicle, and after having benefited for 50 years from displaying the vehicle, Defendant returned the vehicle to Plaintiff in substantially damaged condition. After Defendant's representatives took contradictory positions with respect to the ownership of the vehicle (remarkably claiming that Plaintiff relinquished ownership) and the condition in which the vehicle was maintained and returned to Plaintiff, and surprisingly refusing to compensate Plaintiff for the damage caused to the vehicle while in Defendant's possession, custody and control, Plaintiff was left with no choice but to initiate this action against Defendant

1

asserting claims for Gross Negligence (First Claim for Relief), Breach Of Fiduciary Duty (Second Claim for Relief), Breach Of Contract (Third Claim for Relief), and Breach Of The Implied Covenant of Good Faith and Fair Dealing (Fourth Claim for Relief).

Notwithstanding that each of the claims pled by Plaintiff are meritorious, Defendant seeks to avoid liability for its misconduct and negligence in moving to dismiss the claims for Gross Negligence, Breach of Fiduciary Duty, and Breach of the Covenant of Good Faith and Fair Dealing. Plaintiff respectfully submits that the Motion should be denied for the following reasons: (1) as a matter of law and fact, Defendant, as a museum that received Plaintiff's personal property for display to the public, owed a fiduciary duty to Plaintiff; (2) the *Moorman* doctrine does not apply to losses sustained as a result of a breach of a fiduciary duty; and (3) the Implied Covenant of Good Faith and Fair Dealing does in fact exist with respect to the parties' relationship.

II.     **STATEMENT OF RELEVANT FACTS**

Plaintiff is the owner of the historic Spirit of America vehicle, which twice broke the speed record for vehicular land travel in the 1960s. Compl. ¶ 1. In or around 1965, Plaintiff and Defendant entered into an oral agreement whereby Plaintiff agreed to loan the Spirit of America to Defendant, in part, for the purpose of displaying and preserving the vehicle. *Id.* ¶ 13. Pursuant to the parties' agreement, the vehicle was loaned to Defendant on the condition that, in the event that the Spirit of America was to be removed from exhibition, it would be returned to Plaintiff at his request. *Id.* In 2015, Defendant notified Plaintiff that it intended to remove the vehicle from exhibition, and at that time, Plaintiff elected to have the vehicle returned to him in California. *Id.* ¶¶ 14-15. After Plaintiff recovered possession of the vehicle from Defendant, Plaintiff discovered that the vehicle had been substantially damaged while under the care of Defendant and needed several hundred thousands of dollars in repairs. *Id.* ¶¶ 15-17.

Plaintiff requested that Defendant pay for the repairs, but Defendant denied any liability. Following Plaintiff's request, Defendant acknowledged in writing that Plaintiff owns the vehicle, then remarkably did an about-face and claimed that Plaintiff gave the vehicle to Defendant, even *after* the vehicle was returned to Plaintiff as the rightful owner! Because Defendant refuses to acknowledge its responsibility to pay for repairing the damage it caused or allowed to be caused to

the historic record-setting vehicle, Plaintiff initiated this action.

**III.     ARGUMENT**

When reviewing a Federal Rules of Civil Procedure, Rule 12(b)(6)[1] motion to dismiss, the Court accepts as true all allegations in the Complaint.[2] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While extrinsic evidence generally may not be considered in resolving motions to dismiss, a court may consider "documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013); *see also Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (court may take judicial notice of matters in the public record).

To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). This requirement is satisfied if the Complaint: (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, *supra,* 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra,* 556 U.S. at 678, citing *Bell Atl.*, *supra,* 550 U.S. at 556.

As set forth in greater detail below, Plaintiff submits that each of the Claims for Relief are sufficiently pled and the Motion should be denied.

**A.     Defendant Owed a Fiduciary Duty to Plaintiff, Including to Preserve the Condition of the Spirit of America.**

The Second Claim for Relief for breach of fiduciary duty is sufficiently pled. Defendant's

---

[1]   All future references are to the Federal Rules of Civil Procedure unless otherwise indicated.
[2]   Defendant's unsupported contentions in footnote 1, including that "Plaintiff agreed in writing to donate the car" must therefore be completely ignored. Mot. 1, n.1.

contention that "a party must allege that there was a 'significant degree of dominance and superiority of one party over another'" to support a claim for breach of fiduciary duty is not completely accurate. Mot. 6. Rather, a fiduciary relationship can arise either as a matter of law or, alternatively, out of the special circumstances of the parties' relationship. *Crichton v. Golden Rule Ins. Co.*, 358 Ill. App. 3d 1137, 1149 (5th Dist. 2005). As alleged in the Complaint and set forth below, a fiduciary relationship existed between Plaintiff and Defendant both as a matter of law and under the special circumstances of the parties' relationship.

1. **A Fiduciary Relationship Existed Between the Parties as a Matter of Law.**

It is widely accepted that museums have fiduciary responsibilities over the collections and artifacts they retain. *See, e.g.,* Ass'n of Art Museum Directors, "Professional Practices in Art Museums" (2011), Attachment 1 to Plaintiff's Appendix of Extrajudicial Authorities ("Appendix"), filed concurrently herewith, at 23 (affirming a general understanding "that museums must fulfill their fiduciary responsibilities[.]")  In fact, the American Alliance of Museums (formerly the "American Association of Museums", hereinafter "AAM"), an organization of which Defendant is a current member,[3] notes in its professional and ethical guidelines that "[a]s stewards, museums fulfill their *fiduciary and ethical responsibilities by preserving, caring for* and providing access to collection objects[.]" *See* "National Standards & Best Practices for U.S. Museums" ("National Standards"), Attachment 2 to Appendix, at 49, (emphasis added).[4]

---

[3]  *See* Plaintiff's Request for Judicial Notice, filed concurrently herewith.
[4]  It is well settled that, for purposes of deciding a Rule 12(b)(6) motion to dismiss, the court may consider documents outside of the challenged complaint "if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *see also United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) ("district court may take into consideration documents incorporated by reference to the pleadings."). Here, Plaintiff expressly alleges that "Defendant had a duty to . . . act in accordance with the National Standards & Best Practices for U.S. Museums." Compl. ¶ 14. The National Standards are central to Plaintiff's allegations concerning Defendant's breach of its fiduciary duties. Therefore, the Court may consider the National Standards without converting the Motion into a motion for summary judgment. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

Defendant, as an accredited member of AAM, cannot credibly deny that it voluntarily agreed to be bound, "in a formally certified manner", by the standards and fiduciary responsibilities enumerated in AAM's guidelines. *Id.* at 11-12. These guidelines affirm Defendant's "fiduciary obligations" to "hold [its] collections in the public trust [and] require that any decision to...borrow...objects be taken after the completion of appropriate steps and careful consideration." *Id.* at 55. Defendant has further "fiduciary responsibilities" to ensure that "members of the board, staff, and volunteers who participate in the acquisition and management of the collections [] be knowledgeable concerning [] legal compliance requirements and ethical standards...." *Id.* at 58.

In addition to the above referenced fiduciary responsibilities Defendant owed as a member of AAM, AAM emphasizes the extent of Defendant's fiduciary obligations as a steward as set forth in the National Standards:

> Stewardship is the *careful, sound and responsible management of that which is entrusted to a museum's care*. Possession of collections incurs *legal*, social and ethical obligations to provide *proper physical storage, management and care for the collections* and associated documentation, as well as proper intellectual control. Collections are held in trust for the public and made accessible for the public's benefit. Effective collections stewardship ensures that the objects the museum owns, borrows, holds in its custody and/or uses are available and accessible to present and future generations.

*Id.* at 44 (emphasis added).

Thus, as a museum entrusted with the safekeeping and preservation of artifacts and collections – and especially as an accredited member of AAM – Defendant owed fiduciary duties to Plaintiff as a matter of law.

Most of the cases relied upon by Defendant are inapposite as they do not address the museum/donor relationship referenced herein. Rather, the cited cases primarily pertain to circumstances or relationships that do not create a fiduciary duty, and tellingly omit any reference to the obligations of a museum.

Defendant relies primarily on *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11 (2d Dist. 1995), for its argument that no fiduciary relationship exists here. Mot. 6-7. *Lagen*, however, involved a dispute between a real estate investment company and an investor – a relationship in which, unlike

5

here, a fiduciary duty does not exist as a matter of law. *Lagen*, at 23 (relationship "insufficient as a matter of law to charge the existence or breach of a . . . fiduciary duty."). Similarly, Defendant's proffered case, *Ogden v. Hoyt*, No. 04 C 2412, 2005 WL 66039, at *1, *7 (N.D. Ill. Jan. 11, 2005), examined the relationship between the CEO of an investment company and the company's senior employee where, again, no fiduciary relationship existed as a matter of law. Mot. 7. Additionally, Defendant's citation to *Avila v Citimortgage, Inc.*, No. 13 C 3566, 2013 WL 5477574, at *2 (N.D. Ill. Oct. 2, 2013), explains only that while "some relationships are fiduciary as a matter of law, the debtor-creditor relationship is not one of them."

Finally, Defendant notes the existence of a bailment contract in *Tucker v. Soy Capital Bank and Trust Co.*, 974 N.E.2d 820, to attempt to paint a false similarity between that case and the instant case. *Tucker*, however, involved a defendant bank's handling of the plaintiff's IRA investment account, which was the "bailment" at issue there. *Id.* at 835. Furthermore, the *Tucker* court found that a fiduciary relationship did not exist there primarily because the plaintiff "signed an agreement clearly indicating [the bank] had no duty . . . and which contained a clear release [for the alleged claims]". *Id.* at 830. Plaintiff did not sign any such written agreement and the Complaint does not contain any such allegations.

Unlike all the above cases, Defendant has specific, enumerated fiduciary obligations as referenced in the AAM National Standards. None of the authorities relied on by Defendant supports the conclusion that there was no fiduciary relationship between Plaintiff and Defendant as alleged in the Complaint.

### 2. A Fiduciary Relationship Existed Between the Parties Arising Out of Special Circumstances.

Even if a fiduciary relationship between the parties were not established as a matter of law (which it is), a fiduciary relationship nevertheless existed due to the special circumstances existing between the parties. "The relevant factors in determining whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant party' and placed trust and

confidence in it." *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 314 (2002).

Plaintiff was in his 20s in 1965 when he loaned the Spirit of America vehicle to Defendant, one of the preeminent technology museums in the United States. Compl. ¶¶ 6, 13. Contrary to Defendant's assertion that Plaintiff did not "rely on the Museum to preserve the car" (Mot. 7) – which must be disregarded as it is a factual contention outside the Complaint – Plaintiff expressly alleges otherwise: "*To maintain the condition* and historical significance of the Spirit of America...Breedlove entered into an oral agreement with Defendant whereby the Spirit of America was loaned to Defendant...." Compl. ¶ 13(emphasis added).

As a young man, Plaintiff entrusted Defendant with broad managerial powers over the vehicle, and placed trust and confidence in Defendant based on its reputation and experience as a nationally renowned museum. Thus, because of the vast disparity between the parties in terms of experience and sophistication, and because Plaintiff explicitly relied on Defendant to maintain the condition of the Spirit of America, the special circumstances existing between the parties gives rise to a fiduciary relationship. Defendant breached its fiduciary duties by: (a) failing to prevent museum attendees from damaging the Spirit of America; (b) incompetently attempting to repair and replace the damaged parts of the vehicle; (c) losing a number of the vehicle's internal parts, and; (d) failing to notify Plaintiff of the vehicle's deteriorating condition for over 50 years. Compl. ¶ 25.

A fiduciary relationship between Plaintiff and Defendant exists both as a matter of law and under the special circumstances between the parties, and Plaintiff has sufficiently pled a valid claim for breach of fiduciary duty.

> **B.** **The *Moorman* Economic Loss Doctrine does Not Bar the First Claim for Gross Negligence.**

As Defendant concedes, the *Moorman* economic loss doctrine does *not* bar recovery in tort when the defendant owes extracontractual duties to the plaintiff. Mot. 3, citing *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 851-52 (N.D. Ill. 2008); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (the key question is whether duty "existed independent of the contract."). "Where a duty arises outside of the contract, the economic loss

doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162 (1994).

Defendant admits, as it must, that the *Moorman* economic loss doctrine is subject to a number of exceptions. Mot. 4. Defendant is incorrect, however, in asserting that the doctrine is limited *only* by the three exceptions identified in the Motion. Illinois law is clear that the *Moorman* economic loss doctrine *does not apply* to losses sustained as a result of *a breach of fiduciary duty*. *Illinois Constructors Corp. v. Morency & Associates, Inc.*, 802 F. Supp. 185, 189 (N.D. Ill. 1992) *citing Lake Cty. Grading Co. of Libertyville v. Great Lakes Agency, Inc.*, 226 Ill. App. 3d 697, 702 (1992) ([The *Moorman* doctrine] does not apply to extracontractual duties such as . . . fiduciary duties.").

As set forth above, Defendant had a fiduciary duty, existing independent of any contractual relationship, to preserve and maintain the condition of the Spirit of America while the vehicle was on loan to Defendant for preservation and display, and within its sole possession, custody and control. Defendant's invocation of the *Moorman* economic loss doctrine is therefore misplaced.[5] Mot. 2-6. Specifically, as explained in detail above, Defendant owed fiduciary duties to both Plaintiff and the general public – fiduciary duties which it willingly and formally agreed to accept under the terms of its accreditation, and its acceptance and displaying of the Spirit of America vehicle. *See* National Standards at 11-12. These fiduciary duties "existed independent of the contract". Thus, the *Moorman* doctrine does not apply to this action and does not bar Plaintiff's claim for gross negligence. *See Wigod*, *supra,* 673 F.3d at 567; *see also Lake Cty. Grading*, *supra*, 226 Ill. App. 3d at 702.

Notably, even if Defendant did not owe any extracontractual fiduciary duties to Plaintiff, the *Moorman* doctrine would still not apply because Plaintiff's claim falls within the property damage exception to the *Moorman* doctrine. Under this exception, tort recovery is allowed where

---

[5] Defendant's attempt to conflate the issue by noting that Plaintiff's gross negligence and breach of contract claims similarly allege that Defendant failed "to exercise reasonable care to preserve the condition of the Spirit of America" (Mot. 4) is nothing more than a red herring. Plaintiff is permitted to plead in the alternative and cannot be penalized for alleging a required element of a claim for negligence.

property damage is incurred as a result of a sudden occurrence which presents the likelihood of injury to property. *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill. 2d 21, 30, 43 (1997); *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 327 Ill. App. 3d 346, 353 (4th Dist. 2002).

Plaintiff alleges that Defendant "incompetently cut[] and re-weld[ed] the Spirit of America's frame, which caused certain of the aluminum panels not to fit and also misaligned the tubular frame members." Compl. ¶ 20. This is precisely the type of sudden, unintended event presenting great risk to property, contemplated by the property damage exception. Thus, the *Moorman* doctrine does not apply and does not bar the First Claim for Relief for Gross Negligence.

### C. There is an Implied Covenant of Good faith and Fair Dealing.

Illinois recognizes and implies a covenant of good faith and fair dealing in every contract unless there is a specific provision or express disavowal of the implied covenant. *Kipnis v. Mandel Metals., Inc.,* 318 Ill. App. 3d 498, 506 (1st Dist. 2000). The implied covenant ensures that one party does not take advantage of the other in a way that could not have been envisioned or intended at the time the agreement was entered into or to do anything that impacts a party's right to receive the benefit of an agreement. *Vincent v. Doebert*, 183 Ill. App. 3d 1081, 1090 (2d Dist. 1989). Thus, it is entirely possible for a plaintiff to allege that a defendant breached the implied covenant.

While acknowledging there are special circumstances under which a separate claim for relief for breach of the implied covenant may be alleged, if the Court is inclined to find that the Fourth Claim for Relief for Breach of the Implied Covenant of Good Faith and Faith Dealing is not properly pled, Plaintiff respectfully requests leave to amend the Complaint to incorporate the relevant allegations from the Fourth Claim for Relief into the existing Third Claim for Relief for Breach of Contract. *See* Fed. R. Civ. Proc. 15(a)(2) (leave to amend should be given "when justice so requires"); *Forman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be "freely given"); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & NW. Ind.,* 786 F.3d 510, 519-20 (7th Cir. 2015) (leave to amend given even if the Court questions whether the pleading

defects can be overcome.)[6]

### IV. CONCLUSION

Plaintiff respectfully submits that the Motion should be denied because: (1) Defendant, as a museum, owed Plaintiff a fiduciary duty as a matter of law and fact, having received Plaintiff's personal property for display to the public; (2) the *Moorman* doctrine does not apply to losses sustained as a result of a breach of a fiduciary duty; and (3) the Implied Covenant of Good Faith and Fair Dealing does in fact exist with respect to the parties' relationship. If, however, the Court is inclined to grant any portion of the Motion, Plaintiff respectfully requests leave to amend the Complaint to address any such deficiencies.

Respectfully submitted,

Dated: August 3, 2016      FREEMAN, FREEMAN & SMILEY, LLP

By:  /s/ Steven E. Young
       STEVEN E. YOUNG
       ARMEN G. MITILIAN
       Attorneys for Plaintiff Norman Craig Breedlove

Steven E. Young [admitted Pro Hac Vice 6/23/16 Dkt. 9]
Armen G. Mitilian [admitted Pro Hac Vice 6/23/16 Dkt. 8]
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Eric S. Rein
HORWOOD MARCUS & BERK CHARTERED
500 West Madison Street, Suite 3700
Chicago, Ill 60661
Telephone: (312) 606-3200
Phone: (312) 606-3200

---

[6] Similarly, Plaintiff respectfully submits that if the Court is inclined to grant the Motion with respect to the First Claim for Relief and/or the Second Claim for Relief, he be given leave to amend the Complaint in accordance with the same authority to address any outstanding issues.

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that he caused a copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT MUSEUM OF SCIENCE AND INDUSTRY'S MOTION TO DISMISS COUNTS I, II AND IV OF PLAINTIFF'S COMPLAINT** to be filed electronically on the 3rd day of August, 2016. Notice and a copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF electronic filing system.

                                                /s/ Steven E. Young