IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **Norman Craig Breedlove,** | ) | |
| Plaintiff, | ) | Case No: 16 C 5861 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| **Museum of Science and Industry, Chicago,** | ) ) | |
| Defendant. | ) | |

**ORDER**

For the reasons stated below, the motion to dismiss Counts II and III of the first amended complaint ("FAC") [37] is denied.

**STATEMENT**

The Court assumes familiarity with the facts and procedural history of this case. Briefly, Norman Breedlove ("Plaintiff") filed suit after the Spirit of America, a car he designed and built to break the world speed record, was loaned to the Museum of Science and Industry ("Museum") for display for approximately 50 years. Plaintiff alleges that the car was seriously damaged while in the Museum's care, and in attempting to "hide its negligent care" of the automobile, the Museum further harmed the car. According to Plaintiff, the cost of repair is in excess of $395,000.00. Plaintiff filed suit against the Museum for gross negligence, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing. The Court granted the Museum's motion to dismiss Counts I, II, and IV for failure to state a claim and allowed Plaintiff to replead. Plaintiff's FAC alleges claims for breach of contract (Count I), breach of fiduciary duty (Count II) and negligence (Count III). The Museum again moves to dismiss the breach of fiduciary duty and negligence counts for failure to state a claim.

To survive a Rule 12(b)(6) motion, the complaint must not only provide the Museum with fair notice of a claim's basis, but must also be "facially" plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Breach of Fiduciary Duty

"To establish a breach of fiduciary duty in Illinois, a plaintiff . . . must show: (1) that a fiduciary duty exists; (2) that the duty was breached; and (3) injury proximately caused by the breach." *Lansing v. Carroll*, No. 11 CV 4153, 2016 WL 4045410, at *15 (N.D. Ill. July 28, 2016). "To survive [the Museum's] motion to dismiss, [Plaintiff] only need[s] to plead facts that

plausibly state[] a claim for relief arising out of [the Museum's] violation of a fiduciary duty." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 785 (7th Cir. 2015).

"A fiduciary duty may arise as a matter of law from the existence of a particular relationship, such as an attorney-client or principal-agent relationship." *Ogdon v. Hoyt*, No. 04 C 2412, 2005 WL 66039, at *7 (N.D. Ill. Jan. 11, 2005). According to Plaintiff, the Museum's membership in the American Alliance of Museums ("AAM") and the criteria set forth in the AAM's National Standards and Best Practices for U.S. Museums ["National Standards"], which refers to museums' fiduciary duties, establish a fiduciary relationship as a matter of law. Specifically, Plaintiff alleges that:

> As set forth in the National Standards & Best Practices for U.S. Museums (Exhibit "A" hereto), the irrefutable fiduciary duties that Defendant agreed to adhere to include, but are not limited to: 1) ensuring "the careful, so und and responsible management of that which is entrusted to [its] care"; 2) "provid[ing] proper physical storage, management and care for its collections and associated documentation"; 3) knowing the current condition of its collections; 4) "preserving, caring for and providing access to collection objects for the benefit of the public"; and 5) "be[ing] knowledgeable concerning the legal compliance requirements and ethical standards that pertain to [its collections]." Defendant formally agreed that these fiduciary duties apply to objects in its care regardless of whether those objects are owned by it or in Defendant's possession, custody and control while on loan. Indeed, as evidenced by its membership in the AAM and by virtue of the National Standards & Best Practices for U.S. Museums, Defendant agreed that it would exercise the highest museological standards of care for all collection objects on loan to it.
>
> Importantly, pursuant to the AAM Standards Regarding Collections Stewardship, attached hereto as Exhibit "B" and incorporated herein by this reference, all AAM members that own or manage collections belonging to others on an ongoing basis are required to have a written Collections Management Policy setting forth standards that, in turn, require, among other things, that: 1) "the museum regularly monitors environmental conditions and takes proactive measures to mitigate the effects of . . . damage . . . on collections"; 2) "regular assessment of, and planning for, collection needs (development, conservation, risk management, etc.) takes place and sufficient financial and human resources are allocated for collections stewardship"; and 3) "collections care policies and procedures for collections on exhibition, in storage, on loan and during travel are appropriate, adequate and documented." As the AAM verifies on its website, Defendant has a Collections Management Policy in place that sets forth these fiduciary duties and standards.

(FAC, Dkt. # 33, ¶¶ 28-29.)[1]  Neither party cites caselaw addressing whether a museum owes a fiduciary duty to those who loan objects to it for display.

The Museum argues that the National Standards did not exist in 1965 when Breedlove loaned the car to it, but points to no authority for the proposition that because the standards did not exist in written form at the time the loan was made, no fiduciary relationship existed at that time or could have been created over the course of the parties' 50-year relationship.

The Museum next asserts that nothing in the National Standards indicates that the Museum owed any duty to Plaintiff as a donor or transferor of the car.  The Museum notes that the National Standards indicate that "[m]useums hold collections in trust for the *public*," which does not translate into a basis for asserting that the Museum owed Plaintiff, an individual donor, a fiduciary duty.  However, as Plaintiff observes, the National Standards include a section entitled "Collections Stewardship," which provides that:

> Stewardship is the careful, sound, and responsible management of that which is entrusted to a museum's care.  Possession of collections incurs legal, social and ethical obligations to provide proper physical storage, management and care for the collections and associated documentation, as well as proper intellectual control.  Collections are held in trust for the public and made accessible for the public's benefit.  Effective collections stewardship ensures that the objects the museum owns, borrows, holds in its custody and/or uses are available and accessible to present and future generations.

(FAC, Ex. A, Nat'l Standards, Dkt. # 33, at 44.)  These statements, which the Court considers as they are contained in exhibits to the FAC, are sufficient to allege that the Museum owed a fiduciary duty to Plaintiff while it possessed and displayed his car.

Nor is the Court persuaded by the Museum's contention that Plaintiff's allegation that he "placed trust and confidence in [the Museum] based on its reputation and experience" is inadequate to support a claim for a breach of fiduciary duty.  "A fiduciary relationship exists when there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence." *Avila*, 801 F.3d at 782.  In describing museums' ethical standards, the National Standards indicate that:

> The law provides the basic framework for museum operations. As nonprofit institutions, museums comply with applicable local, state and federal laws and international conventions, as well as with the specific legal standards governing

---

[1] In deciding a Rule 12(b)(6) motion, the Court may consider the complaint itself, as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citation omitted).

> trust responsibilities. This Code of Ethics for Museums takes that compliance as given. But legal standards are a minimum. Museums and those responsible for them must do more than avoid legal liability, they must take affirmative steps to maintain their integrity so as to warrant public confidence. They must act not only legally but also ethically. This Code of Ethics for Museums, therefore, outlines ethical standards that frequently exceed legal minimums.

(*Id*. at 24.) And with respect to collections, the AAM Code of Ethics states that a "museum ensures that . . . collections in its custody are lawfully held, protected, secure, unencumbered, cared for and preserved" and that "acquisition, disposal and loan activities are conducted in a manner that respects the protection and preservation of natural and cultural resources and discourages illicit trade in such materials." (*Id*. at 26.)

Based on these allegations, the Court finds that Plaintiff has stated sufficient facts from which a fiduciary duty could be found to exist. Accordingly, the Court denies the motion to dismiss the breach of fiduciary duty count.

Gross Negligence

The Museum contends that the negligence count is precluded by the economic loss doctrine. In *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982), the Illinois Supreme Court held that a "plaintiff cannot recover for solely economic losses in a tort action," because "contract law is best suited to provide a remedy for loss related to defeated expectations in a commercial bargain, while tort theory is more appropriate when a plaintiff is exposed to an unreasonable risk of injury." *Yeadon Fabric Domes, LLC v. Roberts Envtl. Control Corp*., No. 15 CV 6679, 2016 WL 3940098, at *2 (N.D. Ill. July 21, 2016). Three exceptions to this general rule exist: "1) where the plaintiff sustained personal injury or property damage resulting from a sudden or dangerous occurrence; 2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation; and 3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Id*. "These exceptions [to the economic loss doctrine] have in common the existence of an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself." *Catalan v. GMAC Mortg. Corp*., 629 F.3d 676, 693 (7th Cir. 2011).

"To determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). Here, Plaintiff alleges that the parties "entered into an oral Loan Agreement in or about early 1965," pursuant to which the Museum "agreed to take on the responsibility of maintaining and conserving the condition of the Spirit of America while it remained on display at the Museum." (FAC, Dkt. # 33, ¶ 19). While Plaintiff alleges the existence of a contract, the Court cannot discern its terms (including whether it is the source of any duty to Plaintiff) because it was, according to Plaintiff,

4

oral. Moreover, the Court cannot state as a matter of law at this stage of the litigation that the Museum did not owe an extra-contractual duty to Plaintiff. *See, e.g., Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514-15 (Ill. 1994) (concluding that an accountant's "knowledge and expertise cannot be memorialized in contract terms, but is expected independent of the accountant's contractual obligations," and thus an accountant's "duty to observe reasonable professional competence exists independently of any contract," such that "[t]he economic loss doctrine does not bar recovery in tort for the breach of a duty that exists independently of a contract.").

For these reasons, the motion to dismiss Counts II and III of the FAC is denied.

**Date**: January 5, 2017

_____
**Ronald A. Guzmán**
**United States District Court**